IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:15-CR-144 (JCC) |
| | ) | |
| ARTIN AFSHARJAVAN, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Artin Afsharjavan's ("Defendant") Motion to Reconsider Motion to Strike Surplusage and Preclude Introduction of Evidence at Trial.  [Dkt. 37.]  After hearing argument from counsel, the Court denied the motion from the bench at the September 24, 2015 hearing.  This Memorandum Opinion details the Court's reasoning.

**I. Background**

Defendant was charged by indictment on May 21, 2015, with one count of wire fraud in violation of 18 U.S.C. § 1343. (Indictment [Dkt. 1] at 1-3.)  On September 16, 2015, the Government filed a superseding indictment, which did not substantively change the charge for the purpose of this motion. (Sup. Indictment [Dkt. 40].)  The superseding indictment alleges that between January 2008 and June 2010, Defendant made fraudulent misrepresentations to two individuals, R.F. and F.F., to induce them to give Defendant money, and consequently,

1

Defendant knowingly transmitted, or caused to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds.  (*Id.* ¶ 1.)  It is alleged that R.F. gave Defendant money as an investment, and that F.F. gave Defendant money initially as a loan that later became an investment.  (*Id.* at ¶¶ 2-3.)  Subsequently, Defendant allegedly made false statements regarding the state of the companies that R.F. and F.F. had allegedly invested in, and caused both individuals to remit additional payments.  (*Id.* at ¶ 4.)  Defendant prevented both victims' attempts to withdraw their money by issuing a check drawn on insufficient funds.  (*Id.* ¶ 6.)  In a continued effort to cash out, F.F. transferred an additional $24,500 by wire in May 2010 from his bank to Defendant's bank.  (*Id.* ¶ 7.)

On July 13, 2015, Defendant filed a motion to strike the indictment's references to R.F. and preclude evidence of R.F. at trial.  [Dkt. 23.]  The Court heard arguments and denied that motion from the bench on August 26, 2015.  The Court explained its reasoning in a memorandum opinion.[1]  (Mem. Op. [Dkt. 31] at 7-10; Order [Dkt. 32].)  Defendant now raises three issues with that opinion, which he argues justify

---

[1]     The memorandum opinion also resolved three other defense motions: Motion for Bill of Particulars [Dkt. 21]; Motion for Rule 17(c) Subpoenas [Dkt. 22]; and Motion for Notice of 404(b) Evidence [Dkt. 20].  Defendant does not now ask the Court to reconsider its ruling on any of those three motions.

2

reconsideration. (Def.'s Mem. in Supp. [Dkt. 37-1] at 7.) Having been fully briefed and argued, this motion is ripe for disposition.

## II. Legal Standard

The Federal Rules of Criminal Procedure do not define the standard for reconsidering a judgment in a criminal case. Thus, the civil rules, and specifically Rule 59(e), guide the Court's analysis. *See United States v. Dickerson*, 971 F. Supp. 1023 (E.D. Va. 1997), *rev'd on other grounds*, 166 F.3d 667 (4th Cir. 1999), *rev'd*, 530 U.S. 428 (2000) (referencing civil rules when deciding motion to reconsider criminal judgment). When a motion to reconsider is filed within twenty-eight days of a judgment, Rule 59(e) deems the motion one to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e); *Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978) (concluding that a timely post-judgment motion that "calls into question the correctness of the judgment . . . should be treated as a motion under Rule 59(e), however it may be formally styled"). "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotations omitted). A court may amend a judgment under Rule 59(e) "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not

3

available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Thus, "the rule permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co.*, 148 F.3d at 403 (internal quotations omitted).

### III. Analysis

Defendant's motion does not state which Rule 59(e) basis he relies on, but his motion is fairly read to allege three legal errors in the prior memorandum opinion: (1) the opinion cites facts outside the indictment in its surplusage analysis, (Def.'s Mem. in Supp. at 6-7.); (2) the opinion does not discuss the duplicity argument Defendant raised at oral argument, (*id.* at 2-6); and (3) the indictment's references to R.F. are irrelevant to the crime of wire fraud alleged, (*id.* at 7). The Court will discuss those claims of error *seriatum*.

A.  Citation to Facts Outside of the Indictment

The written opinion's discussion of the connection between Defendant, R.F., and F.F. cites two facts from the Government's brief. (*See* Mem. Op. at 9.) The Court relied on those facts, along with others in the indictment, to conclude that R.F.'s conduct was relevant to the wire fraud alleged because it was part of one unitary scheme. Defendant argues

4

that the Court should have limited its analysis to the four corners of the indictment. (Def.'s Mem. in Supp. at 7.) The Court need not determine whether Defendant's argument is correct because alternative grounds demonstrate that denying the motion to strike was none-the-less the correct legal decision.

A Court may exercise discretion to strike surplusage "only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (quoting *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998)). The Court was correct not to exercise that discretion in this case because the four corners of the indictment allege one unitary scheme and because any surplusage is not prejudicial.

The relevance of R.F.'s conduct depends on the elements of the crime alleged. In this wire fraud case, "the government must show that the defendant (1) devised or intended to devise a scheme to defraud and (2) used . . . wire communications in furtherance of the scheme." *United States v. Wynn*, 684 F.3d 473, 477 (4th Cir. 2012). The misuse of wires forms the overt act. *See United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005). The "scheme," by contrast, forms part of the *mens rea* element. *Id.* The scheme alleged may extend beyond the direct transaction that forms the overt act of wire fraud. *C.f. United States v. Bajoghli*, 785 F.3d 957, 963 (4th

5

Cir. 2015) ("[E]vidence of transactions and conduct not charged is relevant to proving the existence and boundaries of the conspiracy or scheme.").

Because R.F. is not alleged to have made or received any wire communications, the relevance of his conduct must relate to the scheme alleged.  Whether R.F.'s conduct is relevant to a single scheme or is separate and distinct is a difficult line to draw.  *See United States v. Moazzeni*, 908 F. Supp. 2d 748, 751 (E.D. Va. 2012) (quoting *United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006) ("[T]he line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw . . . .").  For that reason, "the decision is left, at least initially, to the discretion of the prosecution."  *Id.*  When reviewing the Government's characterization of the scheme, the Court looks at whether "the indictment 'fairly interpreted' alleges a 'continuing course of conduct, during a discrete period of time.'"  *United States v. Kamalu*, 298 F. App'x 251, 254 (4th Cir. 2008) (quoting *United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006)).  To aid that analysis, this Court has considered "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals."  *United States v. Foggo*, No. 1:08cr79 (JCC), 2008 WL

2777009, at *6 (E.D. Va. July 14, 2008) (quoting *United States v. Mastelotto*, 717 F.2d 1238, 1244 (9th Cir. 1983), *overruled on other grounds by United States v. Miller*, 471 U.S. 130, 135-36 (1985)).  Applying those factors to the present indictment, the Court again concludes that the indictment alleges one unitary scheme.

The nature of the scheme alleged was to entice unwitting individuals to invest money in illusory business opportunities.  To that end, both R.F. and F.F. invested money with Defendant between January 2008 and May 2010.  (Sup. Indictment ¶¶ 2-5.)  The scheme had relatively few participants, as Defendant was the sole promotor and R.F. and F.F. were the only alleged victims.  Both victims' transactions were similar.  F.F.'s investment with Defendant began as a "loan" with guaranteed interest of 24% and was converted into an investment one year later.  (*Id.* ¶ 3.)  Similarly, R.F. invested money with Defendant, although in a more substantial amount than F.F.  (*Id.* ¶¶ 2, 4.)  When the victims sought to withdraw their money, Defendant provided each with a phony check purportedly collateralized by the same commodities account.  (*Id.* ¶ 6.)  The timing of these events is also similar.  F.F.'s "loan" began in January 2008 and R.F.'s investment began one month later, in February.  (*Id.* ¶¶ 2, 3.)  The victims retained their respective investments at least until September 2009.  (*Id.* ¶¶ 4, 5.)  From

7

the indictment, it appears that neither R.F. nor F.F. was able to withdraw his money.  (*Id.* ¶ 6.)  Although it is not clear what happened to R.F.'s investment, the indictment alleges that F.F. made a wire transfer in May 2010 in an effort to cash out of Defendant's businesses.  (*Id.* ¶ 7.)  These allegations lead the Court to conclude that the indictment's references to R.F., when fairly read, are relevant to the scope of one unitary scheme.

Defendant asks the Court to overlook these similarities between Defendant's interactions with each victim, and instead focus on the differences.  For example, the indictment alleges that the victims invested in different business entities, that F.F. made an investment eight months after R.F.'s last investment, and that R.F. invested far more money than F.F.  (Def.'s Mem. in Supp. at 4-6.)  Defendant, however, has not identified a single case in which such minor differences caused a court to strike allegations like those contained in this indictment.  (*See* Def.'s Mem. in Supp. at 3-7 (citing no cases in its argument section).)  Viewing any two acts through a magnifying glass will reveal differences, but those differences do not distort the plain view conclusion that this indictment alleges one unitary scheme.

The Court's decision not to strike was also correct, because the references to R.F. do not unfairly prejudice

8

Defendant. "[I]nformation that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." *United States v. Graves*, No. 3:06cr74, 2006 WL 3419836, at *1 (W.D.N.C. Nov. 27, 2006) (quoting *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006); *accord United States v. Williams*, 445 F.3d 724, 734 (4th Cir. 2006). Defendant previously argued that the indictment's references to R.F. were "highly prejudicial" because they could allow the jury to convict him on conduct unrelated to the wire fraud scheme." (Def.'s Mem. in Supp. Mot. to Strike at 5.) This is a general risk of duplicitous indictments, but it is not clear such a risk exists in this case. Even if this risk were present, however, the Court may mitigate it by properly instructing the jury, as "[i]t is black letter law that duplicitous indictments can be cured through appropriate jury instructions." *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010); *see also Williams*, 445 F.3d at 734 (finding no abuse of discretion in denial to strike surplusage "particularly since the indictment was not given to the jury and the district court specifically instructed the jury that the indictment was not evidence"); *United States v. Moazzeni*, 908 F. Supp. 2d 748, 751 (E.D. Va. 2012) ("If requested, an appropriate jury instruction will guide the jury deliberations and avoid any resulting confusion.").

9

In conclusion, the indictment references to R.F.'s conduct are relevant to the scope of one unitary scheme, which does not constitute surplusage. Even if the references to R.F.'s conduct were surplusage, however, those references do not unfairly prejudice Defendant. Therefore, the Court's denial of Defendant's motion to strike surplusage was not in error.

B.   Duplicitous Indictment

Defendant's second argument of legal error is that the Court's prior opinion "does not address the duplicity argument." (Def.'s Mem. in Supp. at 1.)  At the outset, the Court notes that Defendant did not properly assert this argument in its prior motion. Eastern District of Virginia Local Rule 47(F) requires motions to "be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies."  E.D. Va. Local Crim. R. 47(F).  By Defendant's own admission, its duplicity argument was "not raised in the initial Motion," but was instead first asserted at oral argument.[2] "Raising such new arguments for the first time at oral argument undermines the purpose of orderly briefing and risks subjecting an opponent to an unfair disadvantage." *First Tenn. Bank Nat'l Ass'n v. Global Title, LLC*, No. 3:09cv550, at *1 (E.D. Va. Nov.

---

[2] The Court also notes that Defendant neither ordered nor cited to a transcript to prove it raised duplicity at oral argument.

16, 2010). Despite this procedural impropriety, the Court now considers Defendant's argument and finds it effectively indistinguishable from Defendant's surplusage argument.

The standards for identifying duplicitous indictments are similar to those used to identify indictment surplusage. "The prohibition on duplicity does not apply if the multiple acts could be characterized as part of a single, continuing scheme. Moreover, a duplicitous count is not to be dismissed unless it causes prejudice to the defendant." *Moazzeni*, 908 F. Supp. 2d at 751 (quoting *Kamalu*, 298 F. App'x at 254) (internal citations and quotation marks omitted). When arguing that a single scheme does not exist here, Defendant relies on the same *Foggo* factors that the Court discussed in its memorandum opinion denying the motion to strike surplusage. (*See* Def.'s Mem. in Supp. at 4-7.) The Court reapplied those factors to the indictment in this memorandum opinion. (*See supra* at 7-8.) Thus, for the same reasons discussed above, the Court finds the indictment does not join two or more distinct and separate offenses and does not cause unfair prejudice to Defendant. Therefore, the motion to reconsider will be denied on this ground.

C. <u>Irrelevance of R.F. Allegations</u>

Lastly, Defendant argues that the allegations regarding R.F. are irrelevant because they do not relate to the

11

single act of wire misuse alleged.  (Def.'s Mem. in Supp. at 7.) Defendant raised this same argument in its prior motion to strike surplusage.  (*See* Mem. in Supp. Mot. to Strike [Dkt. 23-1] at 4-5.)  Indeed, this is the same argument Defendant has repackaged under several titles.  The Court has discussed the relevance of R.F.'s conduct at length in this memorandum opinion and the prior.  (*See supra* at 6-7; Mem. Op. at 3-7, 10.) Defendant has presented no reason for the Court to permit relitigation of this issue now.  *See Washington v. Donahoe*, No. DKC 13-0339, 2014 WL 465721, at *1 (D. Md. Feb. 4, 2014) ("Plaintiff is doing nothing more than attempting to relitigate her case, raising arguments that could have been raised prior to the entry of judgment.  Consequently, her motion for reconsideration will be denied.").  Thus, Defendant's motion to reconsider will be denied on this ground.

### IV. Conclusion

For the foregoing reasons, the Court will deny the Defendant's Motion to Reconsider.

An appropriate Order shall issue.

|  |  |
|---|---|
| September 24, 2015 | /s/ |
| Alexandria, Virginia | James C. Cacheris |
|  | UNITED STATES DISTRICT COURT JUDGE |